UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD RAY YORK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M. STEWART, et al.,<br><br>　　　　　Defendants. | Case No.: 1:15-cv-01828-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, (ECF No. 24), DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S OPPOSITION, (ECF No. 29), AND PLAINTIFF'S MOTION FOR SANCTIONS, (ECF No. 30)<br><br>**FOURTEEN-DAY DEADLINE** |

**I.　Introduction and Procedural History**

Plaintiff Reginald Ray York is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's claims against Defendant Garcia for excessive force, Defendant Neighbors for failure to protect Plaintiff from the use of force, and Defendants Garcia, Neighbors, and Stewart for failure to decontaminate plaintiff's cell. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On June 15, 2017, Defendant Stewart filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing Plaintiff has failed to exhaust his administrative

1

remedies. Fed. R. Civ. P. 56(c); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 403 (2014). (ECF No. 51.) Plaintiff failed to file a response with the time permitted, and on July 19, 2017, the Court ordered Plaintiff to file an opposition or statement of non-opposition to the motion within thirty days. (ECF No. 25.)

On July 19, 2017, the same day the Court issued its order, defense counsel received an opposition to Defendant Stewart's motion for summary judgment from Plaintiff. (ECF No. 30, at 17.) Defense counsel contacted the Court and discovered that it had not received Plaintiff's filing, and so defense counsel forwarded a copy to the Court. (*Id.*) Defense counsel copied Plaintiff on its letter to the Court explaining these facts.

On July 24, 2017, the Court received and filed Plaintiff's opposition to Defendant Stewart's motion for summary judgment. (ECF No. 26.) On July 28, 2017, Defendant Stewart filed a reply to Plaintiff's opposition. (ECF No. 27.)

On August 4, 2017, Plaintiff filed a second opposition to Defendant Stewart's motion for summary judgment. (ECF No. 28.) On August 14, 2017, Defendant Stewart filed a motion strike Plaintiff's August 4, 2017 filing, arguing that it is tantamount to an unauthorized sur-reply. (ECF No. 29.)

On September 8, 2017, Plaintiff filed a motion for sanctions against Defendant Stewart and defense counsel under Federal Rule of Civil Procedure 11(b). (ECF No. 30.) Plaintiff asserts in the motion that his August 4, 2017 filing was an attempt to comply with the Court's July 19, 2017 order. (*Id.*) Further, Plaintiff states in the motion that he opposes Defendant Stewart's motion to strike, and that Defendant Stewart and defense counsel should be sanctioned for using improper methods to delay his court proceeding and deny him access to the Courts. (*Id.*)

On September 25, 2017, Defendants filed an opposition to Plaintiff's motion for sanctions, with a supporting declaration. (ECF No. 32.) Defense counsel filed an amended supporting declaration later the same day. (ECF No. 33.)

On September 27, 2017, defense counsel filed a declaration in lieu of a reply by Defendant Stewart to Plaintiff's opposition to the motion to strike. (ECF No. 34.)

These motions are now deemed submitted without oral argument. Local Rule 230(l).

**II.    Defendant's Motion to Strike and Plaintiff's Motion for Sanctions**

    **A.    Motion to Strike**

Before addressing Defendant Stewart's motion for summary judgment, the Court will evaluate Defendant Stewart's motion to strike Plaintiff's second opposition to the motion for summary judgment. Defendant Stewart argues that Plaintiff's second opposition, filed on August 4, 2017, amounts to a sur-reply. Because no sur-reply was invited by the Court, and a sur-reply is not authorized by the Federal Rules of Civil Procedure or the Local Rules, Defendant argues that the second opposition should be stricken pursuant to Federal Rule of Civil Procedure 12(f).

In opposition to the motion to strike, Plaintiff asserts that he provided his initial opposition to Defendant Stewart's motion for summary judgment to prison officials for mailing on July 13, 2017, and it was "logged as being mailed to this Court and the Defendant's attorney on July 14, 2017." (ECF No. 30 ¶ 29.) In support, Plaintiff provides an outgoing legal mail log showing that on July 14, 2017, legal mail was sent for Plaintiff to both the Clerk of the Court and to defense counsel. (*Id.* at p. 21.) Plaintiff asserts that his mail was held or not properly delivered.

As noted above, on July 19, 2017, having not yet received any response or communication from Plaintiff, the Court ordered Plaintiff to file a response to the pending summary judgment motion. Plaintiff asserts that on July 31, 2017, after he received that order, he provided the second opposition to prison officials for mailing, in an attempt to comply with the Court's order. (*Id.* at ¶¶ 3-6; ECF No. 28, at p. 81.) Plaintiff also mailed defense counsel a copy of his second opposition. (ECF No. 30 ¶ 7.) Based on these facts, Plaintiff argues that the motion to strike was made to harass Plaintiff and interfere with his access to the courts, as defense counsel should have understood he was attempting to comply with the Court's order. Therefore, he opposes the motion to strike.[1]

This Court's Local Rules provide for a motion, an opposition, and a reply. Local Rule 230(1). As Defendant correctly points out, neither the Local Rules nor the Federal Rules of Civil

---

[1] Plaintiff also makes numerous assertions regarding an unrelated case, which will not be addressed.

Procedure provide the right to file a response to a reply. *See, e.g., Wyatt v. Zanchi*, No. 1:09–cv–01242 BAM PC, 2011 WL 5838438, at *5 (E.D. Cal. Nov. 21, 2011).

In this Circuit, courts are required to afford pro se litigants additional leniency. *E.g., Wilhelm v. Rotm*an, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). This leniency does not extend to permitting sur-replies as a matter of course, and the Court is not generally inclined to permit sur-replies absent an articulation of good cause why such leave should be granted.

The Court has reviewed Plaintiff's first and second oppositions to the motion for summary judgment. The second opposition is similar to the first opposition, but Plaintiff has re-written and added content to the second opposition. Further, the second opposition was served on Defendant Stewart after Defendant Stewart's reply was filed, and therefore Defendant Stewart did not have any opportunity to respond to any new arguments made in the second opposition. The rules permit Plaintiff only one opposition to Defendant Stewart's summary judgment motion, and Plaintiff has not explained why he should be permitted to provide any additional response to the motion. Thus, under the circumstances, the Court finds it appropriate to recommend striking and disregarding Plaintiff's second opposition.

The Court next turns to Plaintiff's motion for sanctions.

**B.     Motion for Sanctions**

Plaintiff seeks sanctions against Defendant Stewart and defense counsel under Rule 11, arguing that the motion to strike discussed above was brought in bad faith, because counsel should have known the second opposition was mailed in an attempt to comply with the Court's July 19, 2017 order and to prevent any adverse ruling.

Rule 11 provides that, when an attorney signs, files, or advocates a legal memorandum, that attorney certifies that the arguments contained therein are not presented for any improper purpose, that those legal arguments are non-frivolous, and that factual contentions contained therein are supported by available evidence. *See* Fed. R. Civ. P. 11(b). Rule 11(c) requires that a party moving for sanctions under Rule 11 serve the motion on the party against whom sanctions

are sought, and then provide that party twenty-one days following service of the motion within which to correct the putatively sanctionable filing before filing the motion with the court. See Fed. R. Civ. P. 11(c)(2).

In this case, Plaintiff dated his motion on September 1, 2017, and provided it to prison officials for mailing on September 4, 2017, showing that he did not serve his motion on Defendant Stewart or defense counsel at least twenty-one days prior to filing the motion. (ECF No. 30, at 13, 26.) Thus, to the extent that Plaintiff seeks Rule 11 sanctions due to Defendant Stewart's motion to strike being made in bad faith or for a harassing purpose, at a minimum the motion should be denied as procedurally noncompliant with this safe harbor requirement. Further, the Court does not find evidence that the motion to strike was filed for a harassing purpose or in bad faith. Rather, the motion reasonably raised the argument that Plaintiff's first and second oppositions were different, and the second opposition appeared to be a supplement, which is not allowed by the Federal Rules of Civil Procedure and was not authorized by the Court. The Court finds that an objection and motion to strike the second opposition was reasonable and not done in bad faith.

Plaintiff further asserts that prison officials and defense counsel have schemed to deny him access to the courts by delaying or withholding his mail. He argues this causes him to miss court deadlines and interfere with his litigation, which he argues happened in this case regarding his first opposition to the summary judgment motion. Plaintiff asserts that the scheme involves defense counsel from the Office of the Attorney General advising prison officials of their filing of dispositive motions, which then prompts prison officials to hold an inmate's legal mail until a court deadline was missed and a ruling was made against the inmate. Plaintiff seeks for the Court to order that Plaintiff and all inmates in the custody of the California Department of Corrections and Rehabilitation ("CDCR") be provided with tablets and email service with the Court to protect inmate access to the courts and deter the conduct. Liberally construed, this portion of Plaintiff's request is a motion for injunctive relief.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). "A plaintiff seeking a

1 | preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20 (citations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. *Id*. at 22 (citation omitted).

"[A] court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969); *SEC v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007). Similarly, the pendency of this action does not give the Court jurisdiction over prison officials in general or over Plaintiff's litigation issues. *Summers v. Earth Island Institute*, 555 U.S. 488, 492-93 (2009); *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the cognizable legal claims upon which this action is proceeding. *Summers*, 555 U.S. at 492-93; *Mayfield*, 599 F.3d at 969.

Here, Plaintiff's case concerns claims of excessive force, the failure to protect, and the failure to decontaminate his cell while he was housed at Kern Valley State Prison, against officers there. The prison officials at Plaintiff's current institution, California State Prison-Lancaster ("CSP-Lancaster"), the Attorney General's office, and CDCR, are not parties to this action. The pendency of this action does not give the Court jurisdiction over prison officials generally, or over the procedures and operations of CDCR or the institution.

Further, Plaintiff's assertions are based on unsupported conjecture and speculation, and do not show a likelihood of irreparable harm or that the extraordinary relief requested here is appropriate. For these reasons, the Court recommends that Plaintiff's motion for sanctions be denied, in its entirety.

Next, the Court turns to Defendant Stewart's motion for summary judgment for the failure to exhaust administrative remedies.

///
///
///

### III. Motion for Summary Judgment

#### A. Legal Standards

##### 1. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

##### 2. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d 1162, 1166 (9th Cir. 2014); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

The failure to exhaust is an affirmative defense, and Defendant bears the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166. Defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If the Defendant carries this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is

entitled to summary judgment under Rule 56." *Id.* at 1166. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

**B. Discussion**

**1. Summary of CDCR's Administrative Review Process**

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1. The process is initiated by submitting a CDCR Form 602 describing the issue and the relief requested. *Id.* at § 3084.2(a). Three levels of review are involved—a first level review, a second level review and a third level review. *Id.* at § 3084.7. Bypassing a level of review may result in rejection of the appeal. *Id.* at § 3084.6(b)(15). Under § 1997e, a prisoner has exhausted his administrative remedies when he receives a decision at the third level. *See Barry v. Ratelle*, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997).

**2. Summary of Relevant Complaint Allegations**

Plaintiff alleges that on January 18, 2014, at Facility B, Building 8 at Kern Valley State Prison, correctional officers arrived to conduct cell searches. Plaintiff was ordered by correctional officers to strip down to his underwear. Plaintiff was allowed to wear his leg brace and shoes. Plaintiff was placed in waist chains, and escorted to the Building 7 "mini yard" while his cell was being searched.

When Plaintiff was returned to his cell, he discovered that it was trashed. His legal property was scattered all over, and containers of food and toothpaste had been opened and emptied on to Plaintiff's property.

Plaintiff asked the escort officers if he could speak to the Lieutenant in charge of the search. The escort officers left Plaintiff and his cellmate in his cell, and spoke to Sgt. Garcia and Sgt. Neighbors. Sgt. Garcia spoke to Plaintiff about his cell. Plaintiff asked to speak to the Lieutenant. Sgt. Garcia told Plaintiff that the Lieutenant had left the building, but that he would call him when he returned. Plaintiff and his cellmate remained in their cell.

///

Plaintiff was sitting on the floor at the edge of his bed with his back against the wall, and the right side of his body facing the cell door. Plaintiff was still in waist chain restraints. His cellmate sat on the toilet on the opposite side of the cell. Approximately ten minutes later, the cell door opened and Defendant Garcia walked in. Defendant Neighbors was with Garcia. Plaintiff alleges that Defendant Garcia grabbed Plaintiff's arm and put him in a choke hold as he dragged him out of the cell. Defendant Garcia lay Plaintiff down on his back and sprayed Plaintiff's face with pepper spray from a distance of 6 to 8 inches. Defendant Garcia pepper-sprayed Plaintiff for 3 to 4 seconds, shooting the pepper spray into Plaintiff's mouth, nose, and eyes. Defendant Neighbors stood by and watched.

After Defendant Garcia used the pepper spray, the building control officer activated the alarm and went to the door to allow responding officers to enter. Defendant Garcia turned Plaintiff over on his stomach, and used his radio to cancel the alarm. Both Defendants Neighbors and Garcia returned Plaintiff to his cell.

Once at the cell, Defendant Garcia entered the cell in order to assault Plaintiff's cellmate. While he did so, Defendant Neighbors ordered Plaintiff to lay down on his stomach next to "the right wall of the section from his cell." (Compl. 11.) Defendant Neighbors placed his foot on Plaintiff's back, pinning him to the wall. Plaintiff told Defendant Neighbors that he could not breath, that "his brain was hurting," and asked Neighbors to take off the waist chain restraints. (*Id.*) Defendant Neighbors declined to take off the restraints. Plaintiff was in so much pain that he began to "scream and cry and shake." (*Id.*) Shortly thereafter, a correctional officer came into the housing unit. Defendant Neighbors then removed his foot from Plaintiff's back. The correctional officer assisted Plaintiff to his feet.

Plaintiff was taken to the program office to be decontaminated, be medically examined, and undergo a use of force interview. Plaintiff was placed in a holding cage. Plaintiff was interviewed by medical staff. Plaintiff complained about pain from the use of force incident. Medical staff gave Plaintiff a medical care request form.

Defendant Garcia told Defendant Stewart about the use of force incident, but Stewart did not speak to Plaintiff about either the use of force or the condition of his cell. Defendant Stewart

directed that Plaintiff be returned to his cell. Defendant Stewart did not order that Plaintiff's cell be decontaminated. Defendants Garcia and Neighbors knew about the use of pepper spray inside Plaintiff's cell, as they had used it on Plaintiff's cellmate. Plaintiff used his state issued towels to try to decontaminate the cell, but was unable to remove the towels from the cell. The ventilation blew hot air into Plaintiff's cell, as it was winter. The warm air made it difficult to breathe or see, and Plaintiff suffered a burning sensation throughout the night.

The next morning, January 19th, medical staff came to Plaintiff's cell. Plaintiff told the unidentified staff member that he was still in pain and "wasn't feeling good." (*Id*. p. 15.) Plaintiff was given another medical care request form to complete. Plaintiff completed the form.

On January 20, 2014, evening medical staff came to Plaintiff's cell to check on him. Plaintiff told the unidentified staff member that he was in pain and needed medical attention. Plaintiff's blood pressure was taken, and it was high. The staff member informed the Registered Nurse, who told Plaintiff to take his blood pressure medication. Plaintiff did so, and his blood pressure was taken two hours later, but it was still high.

Plaintiff was sent to the Correctional Treatment Center (CTC). Plaintiff's blood pressure was taken twice at the CTC, and it was determined that Plaintiff was undergoing a hypertensive emergency. Plaintiff was transported by ambulance to San Joaquin Community Hospital. Medical staff at Kern Valley State Prison informed the physicians at San Joaquin Community Hospital that Plaintiff had been exposed to pepper spray, and that his high blood pressure was not controlled at the time. Plaintiff was admitted to the hospital, treated for high blood pressure, and placed on cardiac monitoring. Plaintiff was discharged the next day.

Plaintiff alleged that he still experiences neck pain when he moves his head up and down as a result of the use of force.

### 3. Undisputed Facts[2]

1. Plaintiff filed this lawsuit on December 7, 2015. (Compl., ECF No. 1.)

---

[2] Defendant Stewart's Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment For Failure to Exhaust Administrative Remedies. (ECF No. 24-2.)

10

2. Plaintiff has submitted over one hundred appeals to the third level of review during the term of his incarceration. (Declaration of M. Voong (Voong Decl.), Ex. A.)

3. Plaintiff has submitted fifty-three appeals during his incarceration at Kern Valley State Prison. (Declaration of C. Gonzales (Gonzales Decl.), Ex. A.)

4. Plaintiff submitted an Inmate Appeal Form 602 on January 23, 2014, concerning excessive force allegations against Correctional Sergeant Garcia and Correctional Sergeant Neighbors. (Gonzales Decl. Ex. B.)

5. The Appeals Coordinator at Kern Valley State Prison received Plaintiff's appeal on January 27, 2014, and assigned it Appeal Log No. KVSP-0-14-00314. (Gonzales Decl. at ¶ 12, Ex. B.)

6. Appeal Log No. KVSP-0-14-00314 was classified as a staff complaint, bypassing the First Level of Review. The second level of review received the appeal on January 31, 2014. (Gonzales Decl. ¶ 13, Ex. B.)

7. The second level of review partially granted Appeal KVSP-0-14-00314 on February 10, 2014, in that an appeal inquiry was completed. (Gonzales Decl. ¶ 14, Ex. D.) The second level of review found Defendants Garcia and Neighbors did not violate CDCR policy. (Id.)

8. The second level response noted that Plaintiff did not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by in his appeal. (Gonzales Decl. ¶ 14, Ex. D.)

9. Plaintiff submitted Appeal Log No. KVSP-0-14-00314 to the third level of review on March 18, 2014. (Gonzales Decl. Ex. A.)

10. The third level of review received Appeal Log No. KVSP-0-14-00314 on March 26, 2017. (Declaration of M. Voong (Voong Decl.) ¶ 10, Ex. A.) The third level of review denied Plaintiff's Appeal Log No. KVSP-0-14-00314, finding Defendants Garcia and Neighbors did not violate CDCR policy regarding Plaintiff's allegations and no further relief was warranted. (Voong Decl. ¶ 10, Ex. B.)

///

11

1. 11. No other appeals were received or accepted by the Office of Appeals from Plaintiff from January 27, 2014 through April 1, 2014. (Voong Decl. ¶ 11.)

### 4. Parties' Arguments

Defendant Stewart argues that Plaintiff failed to file an administrative appeal regarding the allegations forming the basis of his conditions of confinement claim against him, and the time to do so has expired. Plaintiff only filed one appeal regarding the allegations within his complaint: Appeal Log No. KVSP-0-14-00314. The subject of that appeal was limited to allegations of excessive force and assault by staff and the destruction of Plaintiff's personal property, not allegations regarding any failure to decontaminate the cell. Further, the appeal only named Defendants Garcia and Neighbors. Therefore, because Plaintiff did not identify Defendant Stewart or set forth any facts regarding the alleged lack of decontamination, Defendant Stewart and the prison were not on notice of the conditions of confinement claim against Defendant Stewart in this case.

Plaintiff argues that he stated in his appeal that he was not able to speak with the lieutenant, and had prison officials conducted a fair and impartial investigation of his complaint, they would have discovered that Defendant Stewart was the unnamed lieutenant. Further, officials would have learned that Defendant Stewart knew Plaintiff's cell was contaminated with pepper spray, but he nevertheless ordered that Plaintiff be returned to his cell without having it cleaned or decontaminated. Therefore, Plaintiff asserts that he gave sufficient notice of his claim against Defendant Stewart in his fully-exhausted appeal.

In reply, Defendant Stewart argues that because Plaintiff's grievance does not make allegations of any wrongdoing against the unnamed lieutenant, it did not provide sufficient notice of his claim against Defendant Stewart. Further, Plaintiff was informed that he could request assistance to establish the identity of all involved staff, and thus had an opportunity to file an appeal naming Defendant Stewart regarding the allegations raised in this case, but he failed to do so.

///

///

**5. Analysis**

It is undisputed that Plaintiff did not name Defendant Stewart in his inmate appeal. That appeal stated that the subject was "excessive force/assault by staff," and described the issue as follows:

> On 1-18-14 Correction Officers on third watch came to Facility B, Building 8 to search inmate cells. I was placed in waist chains and my cellmate Washington V39680 was placed in handcuffs and we were escorted to the mini yard in building 7 while our cell was being search. When I return back to my cell, I found that the entire cell had been trashed and some of my personal property had been trashed. I showed Sergeant Garcia the condition of my cell and asked him could he have the lieutenant in charged of the search to come to my cell to document the condition of the cell and my damage and destroyed property. Sergeant Garcia told me that the lieutenant had left the building. I asked Sergeant Garcia could he call him to see will he return back to the building to document the call and he agreed to make the call.
>
> About 10 to 15 minutes later, my cell door open and Sergeant Garcia walked into my cell to where I was sitting on the floor by my bunk in waist chains and put me in a choke hold and dragged me out the cell. Sergeant Garcia then put me on my back and took out his can of O.C. pepper spray and pend down on one knee and put the can 6 to 8 inches from my face and sprayed me for 3 to 4 seconds. Sergeant Neighbors then pinn my body against the wall with his foot/boot while Sergeant Garcia went back into the cell and sprayed my cellmate in his face while he sat on the toilet in handcuffs and then dragged him out of the cell.
>
> We was then taken to the program where a 7219 was did and then return back to the cell in the same handcuff. I was never allowed to speak to the lieutenant to document the condition of my cell and the damage to my personal property or to ISU for being assaulted by the sergeants.

(Appeal Log. No. KVSP-0-14-00314, ECF No. 24-5, at 12-15) (errors in original).

The Prison Litigation Reform Act requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions. 42 U.S.C. § 1997e(a) (2008); *see Porter*, 534 U.S. at 524 ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). Exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue. *Id*. at 90.

///

Prisoners need comply only with the prison's own grievance procedures to properly exhaust under the PLRA. *Jones*, 549 U.S. at 218 (2007). "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). This standard "advances the primary purpose of a grievance: to notify the prison of a problem." *Id*. (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir 2004).

Here, the Inmate Appeal Form merely requests that the inmate "Explain your issue," and therefore the standard of *Griffin* applies. Broadly construed, Plaintiff's grievance in this case concerned the search of his cell on January 18, 2014, the destruction of his personal property, and the subsequent use of force by Defendants Garcia and Neighbors. This includes both the physical force used on Plaintiff, and the use of O.C. pepper spray on Plaintiff.

However, although Plaintiff stated that pepper spray was used on him, his grievance does not mention that his cell was contaminated by pepper spray, or that he returned to his cell to find it was not decontaminated. Further, although there is some reference to him requesting to speak to a lieutenant and that he was denied that request, he does not state any facts showing that the lieutenant was aware of his cell conditions and did not address them. Instead, Plaintiff's grievance states that he wanted to speak to the lieutenant to inform the lieutenant of the damage to his cell and property from the search, and the subsequent use of force. This was not sufficient to provide notice of Plaintiff's allegations regarding the cell contamination with pepper spray, or of Defendant Stewart's alleged failure to address those cell conditions.

Plaintiff's argument that a better investigation of his claim would have revealed his allegations against Defendant Stewart is unavailing. Plaintiff cites no authority for his position that prison officials are required to go beyond the issue complained of in his grievance to investigate matters which he does not present. Nor does the record in this case show that, in investigating Plaintiff's complaints regarding Defendants Garcia and Neighbors, they discovered any alleged involvement of Defendant Stewart. Plaintiff is required to notify the institution of the nature of his complaint, and he failed to do so here.

Because Plaintiff failed to provide sufficient notice of his allegations against Defendant Stewart that forms the basis of his claim in this case, he failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). Therefore, the Court recommends that summary judgment be granted in Defendant Stewart's favor.

**IV.     Conclusion and Recommendations**

For the reasons explained, IT IS HEREBY RECOMMENDED that:

1.      Defendant Stewart's motion to strike Plaintiff's August 4, 2017 opposition ot the motion for summary judgment, filed on August 14, 2017 (ECF No. 29), be granted;

2.      Plaintiff's motion for sanctions against Defendant Stewart and the Attorney General and Deputy Attorney General, filed on September 8, 2017 (ECF No. 30), be denied; and

3.      Defendant Stewart's motion for summary judgment for the failure to exhaust administrative remedies, filed on June 15, 2017 (ECF No. 24), be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 20, 2018**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE