# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD RAY YORK, | Case No. 1:15-cv-01828-DAD-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| G. GARCIA, et al., | (ECF Nos. 64, 69) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Reginald Ray York is a state prisoner appearing *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court recommends that both Plaintiff's motion for summary judgment and Defendants' motion for partial summary judgment be denied.

**I.     Procedural Background**

This action is proceeding on Plaintiff's complaint, filed on December 7, 2015, against Defendant Garcia for excessive force in violation of the Eighth Amendment, against Defendant Neighbors for failure to protect Plaintiff from the excessive use of force in violation of the Eighth Amendment, and against Defendants Garcia and Neighbors for failure to decontaminate Plaintiff's cell in violation of the Eighth Amendment. (ECF Nos. 1, 17.)

On March 10, 2017, Defendants Garcia and Neighbors filed answer to Plaintiff's complaint. (ECF No. 20.) On March 16, 2017, the Court issued the discovery and scheduling

order. (ECF No. 21.)

On July 17, 2018, the Court granted Defendants' motion to modify the discovery and scheduling order and extended the deadline for filing a dispositive motion until October 22, 2018. (ECF No. 60.)

As previously stated, on December 3, 2018, Plaintiff filed a motion for summary judgment. (ECF No. 64.)

On December 18, 2018, the District Judge issued an order granting in part Defendants' motion for sanctions and denying Plaintiff's motion for sanctions. (ECF No. 66.) The District Judge imposed an evidentiary sanction on Plaintiff and ordered that Plaintiff is prohibited from supporting his case or opposing Defendants' defenses with any evidence that Plaintiff had not already disclosed to Defendants. (Id.)

On December 20, 2018, the Court issued another order amending the discovery and scheduling order. (ECF No. 67.) In that order, the Court extended the dispositive motion deadline until February 4, 2019, and deemed Plaintiff's motion timely filed. (Id.) Further, the Court extended Defendants' time to file an opposition to Plaintiff's summary judgment until February 4, 2019. (Id.)

On February 4, 2019, Defendants filed an opposition to Plaintiff's motion for summary judgment, as well as their own motion for partial summary judgment.[1] (ECF Nos. 68, 69.)

On February 21, 2019, Plaintiff filed a reply to his motion for summary judgment. (ECF No. 70.) On February 28, 2019, Defendants filed a reply to their motion for partial summary judgment. (ECF No. 71.) Also, on February 28, 2019, Plaintiff filed an opposition to Defendants' motion for partial summary judgment. (ECF No. 72.)

On March 7, 2019, Defendants filed a motion to strike Plaintiff's opposition to Defendant's motion for summary judgment. (ECF No. 73.) On March 18, 2019, the Court denied Defendants' motion to strike Plaintiff's February 28, 2019 opposition, but granted

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 69-2); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988).

Defendants leave to file a supplemental reply within seven days. (ECF No. 74.) On March 22, 2019, Defendants filed their supplemental reply. (ECF No. 74.)

Accordingly, Plaintiff's motion for summary judgment and Defendants' motion for partial summary judgment are deemed submitted for review, without oral argument. Local Rule 230(l).

**II.     Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

///

**III. Discussion**

    **A.    Evidentiary Objections**

        1.    <u>Exhibit D of Plaintiff's Motion for Summary Judgment</u>

Defendants object to Exhibit D of Plaintiff's motion for summary judgment, (ECF No. 64, at 46-50)[2], which are Plaintiff's medical records, on the grounds that the medical records are hearsay and are inadmissible without proper foundation and authentication under Federal Rule of Evidence 901. Additionally, Defendant asserts that the medical records contained in Exhibit D are irrelevant to Plaintiff's claims.

Defendants' objections to Exhibit D are overruled. Initially, with regards to hearsay, at summary judgment, the focus is not on the "admissibility of the evidence's form," but rather on the "admissibility of its contents." <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036-37 (9th Cir. 2003). With regards to lack of foundation and authentication, the fact that Plaintiff did not submit a Custodian of Records declaration is not fatal to the admissibility of Exhibit D. Defendants have made no showing that Plaintiff could not bring a qualified witness into court at trial to lay a foundation for and testify as to the medical records. <u>JL Beverage Co., LLC v. Jim Beam Brands Co.</u>, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial[.]"). Regardless, the Court's consideration of the records are not dispositive of the motion.

With regards to relevancy, given the Court's duty to determine whether there exists a genuine dispute as to any material fact, objections to evidence as irrelevant are both unnecessary and unhelpful. See e.g., <u>Carden v. Chenega Sec. & Protections Servs., LLC</u>, No. CIV 2:09-1799 WBS CMK, 2011 WL 1807384, at *3 (E.D. Cal. May 10, 2011); <u>Arias v. McHugh</u>, No. CIV 2:09-690 WBS GGH, 2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); <u>Tracchia v. Tilton</u>, No. CIV S-062919 GEB KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); <u>Burch v. Regents of Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

---

[2] References herein to page numbers are to the page numbers in the Court's ECF pagination headers.

5

2. <u>Exhibit E of Plaintiff's Motion for Summary Judgment</u>

Defendants object to Exhibit E of Plaintiff's motion for summary judgment on the grounds that the evidentiary sanction imposed against Plaintiff in this case prohibits Plaintiff from using these documents in support of his motion for summary judgment or in opposition to Defendants' motion for partial summary judgment, and the documents are irrelevant, not properly authenticated, and hearsay. However, the Court declines to rule on Defendants' objections to Plaintiff's Exhibit E because Exhibit E is not material to Plaintiff's excessive force, failure to protect, or conditions of confinement claims. <u>S.T. v. City of Ceres</u>, 327 F. Supp. 3d 1261, 1269 n.6 (E.D. Cal. 2018).

**B.  Undisputed Material Facts ("UMF")[3]**

1. Plaintiff Reginald Ray York, CDCR # J-40227, is a state prisoner in the custody of the California Department of Corrections and Rehabilitation. At all times relevant to this action, Plaintiff was housed at Kern Valley State Prison ("KVSP"). (Verified Complaint, ECF No. 1, at 1, 3.)

2. At all times relevant to this action, Defendants G. Garcia and J. Neighbors were Correctional Sergeants employed at KVSP. (Complaint, at 3.)

3. On January 18, 2014, KVSP correctional officers went to Facility B, Building 8 during third watch to conduct searches of inmates' cells. (Complaint, at 3.)

---

[3] These facts are taken from a combination of Defendant's Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment, (ECF No. 69-5), and Plaintiff's facts, as explained in this footnote. The Court notes that Plaintiff did not comply with Local Rule 260(a) and provide a separate statement of undisputed facts in support of his summary judgment motion. L.R. 260(a). Rather, in each portion of his summary judgment motion discussing one of his claims, Plaintiff has included specific material facts relied upon in support of his motion and citations to the particular evidence relied upon to establish that fact under headings labeled "Plaintiff Reginald Ray York Disputed Facts" and "Material Facts". (ECF No. 64.) Facts stated under these headings are accepted except where brought into dispute by Defendants' Response to Plaintiff's Undisputed Material Facts, (ECF No. 68-2).

Further, Plaintiff also did not comply with Local Rule 260(b), which requires any party opposing a motion for summary judgment to reproduce the facts in the moving party's statement of undisputed facts and admit those facts that are undisputed, deny those that are disputed, and provide a citation to the evidence relied upon in support of the dispute. As a result, Defendants' statement of undisputed facts in support of their motion is accepted except where brought into dispute by Plaintiff's verified complaint. <u>See</u> <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence)

Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

| | | |
|---|---|---|
| 1 | 4. | On January 18, 2014, Plaintiff was housed in cell 120 in Facility B, Building 8. (ECF No. 64, at 43.) |
| 3 | 5. | On January 18, 2014, Plaintiff was body searched, [wanded] with a metal device, and escorted to Facility B, Building 7 mini yard while his cell was being searched. (Complaint, at 4, 6.) |
| 6 | 6. | About two hours later, two correctional officers came to Facility B, Building 7 mini yard and escorted Plaintiff back to his cell, where Plaintiff discovered that his entire cell had been trashed and some of his personal property had been destroyed. (Id. at 6-7.) |
| 10 | 7. | After looking at the condition of his cell, Plaintiff asked the two correctional officers who had escorted him back to the cell to let lieutenant in charge of the search know that Plaintiff would like to speak to him. (Id. at 7.) |
| 13 | 8. | The two correctional officers left Plaintiff and Plaintiff's cellmate in restraints inside of their cell, and went to Defendant Garcia, and told him that Plaintiff wanted to speak to him, instead of the lieutenant in charge of the search. (Id.) |
| 16 | 9. | Defendant Garcia came to Plaintiff's cell door and asked what Plaintiff and his cell mate wanted. (Id.) |
| 18 | 10. | Plaintiff asked Defendant Garcia to call the lieutenant in charge of the search and have the lieutenant come to the cell to view the condition of the cell. (Id.) |
| 20 | 11. | Defendant Garcia told Plaintiff that the lieutenant had left the building. (Id. at 7-8.) |
| 22 | 12. | Plaintiff then asked Defendant Garcia to call the lieutenant in charge of the search to see if he would return to Building 8 in order to document the condition of Plaintiff's cell. (Id. at 8.) |
| 25 | 13. | Plaintiff and his cellmate remained in restraints while they waited for Defendant Garcia to return from calling the lieutenant. (Id.) |
| 27 | 14. | Plaintiff sat on the floor at the edge of his bed with his back against the wall, and the right side of his body facing the cell door. (Id.) |

|   |   |   |
|---|---|---|
| 1 | 15. | Defendant Garcia returned to Plaintiff's cell about 10 to 15 minutes after agreeing to call the lieutenant in charge of the search. (Id. at 8-9.) |
| 3 | 16. | Defendant Garcia sprayed Plaintiff in the face with O.C. pepper spray. Defendant Garcia also sprayed Plaintiff's cellmate with O.C. pepper spray. (Id. at 12.) |
| 5 | 17. | The O.C. pepper spray went into Plaintiff's mouth, nose, and eyes, causing him severe pain. (Id. at 9.) |
| 7 | 18. | Plaintiff and his cellmate were taken to Facility B yard program office to be decontaminated, a CDCR 7219 medical evaluation was conducted, and Plaintiff was then returned back to his cell. (Id. at 12.) |
| 10 | 19. | Plaintiff wiped down the walls, floors, and lower locker where Defendant Garcia sprayed the pepper spray, but Plaintiff was unable to remove the towels from the cell.[4] (Id. at 14.) |
| 13 | 20. | The ventilation system in Building 8 blew hot air into the cell's vent throughout the night, which made the residue and the vapors of the O.C. pepper spray very strong, making it difficult for Plaintiff to breathe and see, and he experienced a burning sensation and pain throughout his head and body. (Id. at 14.) |

**C.  Analysis**

    1.  Excessive Force

Plaintiff moves for summary judgment on his claim for excessive force in violation of the Eighth Amendment against Defendant Garcia. (ECF No. 64, at 1, 5.) Defendant Garcia does not move for summary judgment on Plaintiff's excessive force claim. (ECF No. 69.)

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S.

---

[4] Defendants assert that UMF No. 19 is disputed because they "dispute that Plaintiff's cell required decontamination by wiping down with towels. Any need to decontaminate the cell by such means would have been documented." (ECF No. 68-2, at 14.) However, Defendants are not disputing that Plaintiff wiped down the walls as listed in UMF No. 19. Therefore, the Court finds that UMF No. 19 is undisputed.

312, 320-21 (1986)).  In making this determination, the court may evaluate (1) the extent of any injury suffered by Plaintiff; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible prison officials; and (5) any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force causes should be granted sparingly."  Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (citation omitted).

In his verified complaint, Plaintiff alleges that, on January 18, 2014, while he was waiting for Defendant Garcia to return and tell his cellmate and him whether the lieutenant in charge of the search would return to the building in order to document the condition of Plaintiff's cell, he sat on the floor at the edge of his bed with his back against the wall and the right side of his body facing the cell door, while he was wearing waist-chain handcuffs.  (Complaint, ECF No. 1, at 4, 8.)  When Plaintiff's cell door opened, Defendant Garcia walked into the cell, grabbed Plaintiff's right arm with his right hand, put Plaintiff in a choke hold with his left arm, and began to choke Plaintiff as Defendant Garcia dragged Plaintiff's partially nude body out of the cell.  (Id. at 9.)  Once Defendant Garcia had dragged Plaintiff out of the cell, Defendant Garcia laid Plaintiff on his back.  (Id.)  Plaintiff asserts that, then Defendant Garcia took his MK9X Oleoresin Capsicum Pepper Spray from his holster, bent down on one knee, put the pepper spray 6 to 8 inches from Plaintiff's face, and sprayed Plaintiff with the pepper spray for 3 to 4 seconds.  (Id.)  The pepper spray went into Plaintiff's mouth, nose, and eyes, causing Plaintiff severe pain.  (Id.)  Then, Defendant Garcia placed Plaintiff on his stomach and got on his radio to cancel the building alarm that had been activated when Defendant Garcia sprayed Plaintiff.  (Id.)  Plaintiff's version of the January 18, 2014 incident between Plaintiff and Defendant Garcia is supported by the declaration of Michael Washington, Plaintiff's cellmate on the date of the incident.  (ECF No. 64, at 102.)

On the other hand, Defendant Garcia disputes the application of force as alleged by

1 | Plaintiff. Defendant Garcia states that, on January 18, 2014, after he determined that the
2 | lieutenant had left the building, he returned to Plaintiff's cell, along with another officer, to
3 | inform Plaintiff of that fact. (Declaration of Defendant G. Garcia, ECF No. 68-4, ¶¶ 6-7.)
4 | Defendant Garcia informed Plaintiff that he was going to escort Plaintiff and his cellmate to the
5 | program office in a different building to discuss the condition of their cell. (Id. at ¶ 7.) After
6 | Defendant Garcia directed the Control Booth Officer to open the door to Plaintiff's cell,
7 | Defendant Garcia placed his hand on Plaintiff's arm to escort him out of the cell. (Id. at ¶¶ 7-8.)
8 | Defendant Garcia denies placing Plaintiff in a "choke hold" at any time. (Id. at ¶ 8.) Plaintiff
9 | twisted away from Defendant Garcia, pulling away, and falling to the ground, landing on his
10 | buttocks. (Id.) As Plaintiff laid on the ground, he began kicking his legs towards Defendant
11 | Garcia. (Id.) Defendant Garcia ordered Plaintiff to stop kicking and to lay on his stomach, but
12 | Plaintiff did not comply. (Id.) After Defendant Garcia repeated his orders and Plaintiff again
13 | failed to comply, Defendant Garcia sprayed Plaintiff in the face with his MK-9X OC pepper
14 | spray from approximately three feet away. (Id. at 9.) The Control Booth Officer initiated an
15 | alarm. (Id. at 10.) Defendant Garcia directed Officer Drazil to escort Plaintiff to the program
16 | area for decontamination and medical evaluation. (Id. at 12.) Defendant Garcia then radioed
17 | central control to let them know that there was no need for any additional officers or further
18 | response because the incident was over. (Id. at 13.)

Based on the conflicting version of events, as described by Plaintiff in his verified complaint and as described by Defendant Garcia in his verified declaration, the Court determines that there are genuine issues of material fact regarding whether there was a need for Defendant Garcia to use force on Plaintiff, the relationship between that need for the application of force and the amount of force actually used on Plaintiff, and the threat reasonably perceived by Defendant Garcia. Therefore, the Court finds that Plaintiff is not entitled to judgment as a matter of law. Accordingly, Plaintiff's motion for summary judgment on his excessive force claim should be denied.

### 2. Failure to Intervene

Both Plaintiff and Defendant Neighbors move for summary judgment regarding Plaintiff's

claim against Defendant Neighbors for failure to intervene/protect Plaintiff from the excessive use of force in violation of the Eighth Amendment.

A prison official may be liable under § 1983 if he is aware that a fellow official is violating a prisoner's constitutional rights, but fails to intervene. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.") (citation omitted); see also Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n. 3 (1st Cir. 1990) ("An officer who is present at the scene who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."). A failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene, but failed to do so. Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham, 229 F.3d at 1289.

In his verified complaint, Plaintiff alleges that, on January 18, 2014, Defendant Neighbors returned to Plaintiff's cell with Defendant Garcia and stood at the door while Defendant Garcia walked into the cell, grabbed Plaintiff by his right arm, put Plaintiff in a choke hold, and dragged Plaintiff from the cell in waist-chain restraints. (Complaint, ECF No. 1, at 10.) Plaintiff also alleges that Defendant Neighbors watched Defendant Garcia place Plaintiff on his back, remove his MK9X oleoresin capsicum pepper spray from his holster, bend down on one knee, put the spray 6 to 8 inches from Plaintiff's face, and spray Plaintiff for 3 to 4 seconds. (Id.) Plaintiff asserts that Defendant Neighbors could have stopped Defendant Garcia from going into the cell, from dragging Plaintiff out of the cell in waist-chain restraints, and from spraying Plaintiff in the face with pepper spray, but that Defendant Neighbors just stood by the door of Plaintiff's cell and did nothing. (Id.)

Additionally, Plaintiff has provided the Court with the verified declaration of Wallace W. Vaughn, who stated that, on January 18, 2014, he witnessed Defendants Garcia and Neighbors enter Facility B, Building 8 and go to the cell at the far end of section B. (ECF No. 64, at 106.) Mr. Vaughn further states that, shortly thereafter, he smelled a strong odor of pepper spray and heard someone "screaming/crying" and an alarm. (Id.) Then, Mr. Vaughn alleges that he

witnessed Plaintiff and Plaintiff's cellmate being taken out of the section by two officers, and he saw Defendants Garcia and Neighbors, who were talking to each other, walking behind Plaintiff and the escorting officers. (Id.)

On the other hand, Defendant Neighbors disputes that he was present during the incident. Defendant Neighbors asserts he was at a different location within the facility during the events at issue. Defendant Neighbors asserts in his declaration, submitted in support of his opposition to Plaintiff's summary judgment motion and in support of his own motion for summary judgment, that, on January 18, 2014, he reported to work at approximately 1400 hours to the Facility B Program Sergeant's office to sign in on the Fair Labor and Standards Act sign in sheet. (Declaration of Defendant J. Neighbors, ECF Nos. 68-3 & 69-4, ¶ 3.) Defendant Neighbors further asserts that, due to staff shortages, he was redirected from his regular post as a Facility B Program Sergeant to a post as the Facility B, Building 1, Administrative Segregation Unit ("ASU") Sergeant. (Id.) On January 18, 2014, Defendant Neighbors signed in on the Fair Labor and Standards Act sign in sheet and reported to Facility B, Building 1. (Id.) Defendant Neighbors asserts that, because he was working as the ASU Sergeant in Facility B, Building 1, he was not present inside Facility B, Building 8 and he was not present for the altercation between Plaintiff and Defendant Garcia on January 18, 2014. (Id. at ¶¶ 4-5.) Defendant Neighbors declares that he did not witness or participate in the use of force that occurred on January 18, 2014. (Id. at ¶ 6.) In support of Defendant Neighbors' account of the events that occurred on January 18, 2014, Defendant Garcia submitted a declaration that Defendant Neighbors was not present during the incident between Plaintiff and Defendant Garcia. (Declaration of Defendant G. Garcia, ECF Nos. 68-4, ¶ 17; Declaration of Defendant G. Garcia, ECF No. 69-3, ¶ 15.)

Based on the evidence described above, the Court determines that there is a genuine issue of material fact regarding whether Defendant Neighbors was present and had a realistic opportunity to intervene in the use of force incident between Plaintiff and Defendant Garcia, but failed to do so. Therefore, the Court finds that neither Plaintiff nor Defendant Neighbors are entitled to judgment as a matter of law. Accordingly, both Plaintiff's and Defendant Neighbors' summary judgment motions on Plaintiff's claim for failure to protect/intervene against Defendant

1 | Neighbors should be denied.

### 3. Conditions of Confinement

Both Plaintiff and Defendants Garcia and Neighbors move for summary judgment regarding Plaintiff's claim against both Defendants for failure to decontaminate Plaintiff's cell in violation of the Eighth Amendment.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). "Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, 'those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" Id.; see also Hudson v. McMillian, 503 U.S. 1, 9 (1992). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Id.

"A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his [health or] safety in allowing the deprivation to take place." Morgan, 465 F.3d at 1045. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if the official knows that the plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 837-45 (1994).

In his verified complaint, Plaintiff alleges that, on January 18, 2014, after both he and his cellmate were sprayed with pepper spray by Defendant Garcia, he was taken to the Facility B program office to be decontaminated, have a CDCR 7219 medical evaluation performed, and to have a use of force interview. (Complaint, ECF No. 1, at 12.) Plaintiff asserts that he was then returned back to his cell, which had not been decontaminated or cleaned. (Id. at 11.) Plaintiff declares that he did his best to clean the cell while he was in a lot of pain from the continuing

exposure to the pepper spray.  (Id. at 12.)  Specifically, Plaintiff declares that he wiped down the wall, floor, and lower locker where Defendant Garcia had sprayed the pepper spray with his state-issued towels, but he was unable to remove the towels that he used to clean the cell from the cell.  (Id.)  Finally, Plaintiff alleges that the ventilation system in the building blew hot air into his cell throughout the night, which made the residue and vapors of the pepper spray very strong, and caused Plaintiff to have difficulty breathing and seeing and to experience a burning sensation and pain throughout his head and body.  (Id.)

On the other hand, in his verified declaration, Defendant Garcia asserts that he did not know whether Plaintiff's cell required decontamination, that he was never informed that Plaintiff was complaining that his cell required decontamination by wiping down the pepper spray residue, and there is no documentation that Plaintiff's cell was required to be wiped down and cleaned.  (Declaration of Defendant G. Garcia, ECF No. 69-3, ¶ 12.)  In his verified declaration, Defendant Neighbors asserts that he was not present for the altercation between Defendant Garcia and Plaintiff on January 18, 2014, he did not have a role in determining whether Plaintiff's cell required additional decontamination, and he would not have participated in any decontamination that may have been required.  (Declaration of Defendant J. Neighbors, ECF No. 69-4, ¶¶ 5-7.)

In order to hold a prison official liable under the Eighth Amendment for denying humane conditions of confinement, a plaintiff must establish that the official knew that the plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it.  Farmer, 511 U.S. at 837-45.  Further, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference."  Id. at 837.  Here, after considering both Plaintiff's evidence and Defendants' evidence and resolving all factual disputes in Plaintiff's favor, the Court finds that Plaintiff has failed to establish a genuine issue of material fact regarding whether Defendants Garcia or Neighbors knew that Plaintiff faced a substantial risk of serious harm from the pepper spray residue in his cell and disregarded that risk by failing to take reasonable steps to abate it.

In this case, Plaintiff has not presented any evidence that either Defendant Garcia or Neighbors knew the cell was still contaminated.  Plaintiff argues that Defendants Garcia and

14

Neighbors were deliberately indifferent because they were aware that Defendant Garcia had sprayed pepper spray inside of Plaintiff's cell and inside of Building 8 and another inmate in Building 8 smelled a strong odor of pepper spray around the time of the incident. However, Plaintiff's evidence also establishes that he had been removed from his cell for a time in order for his person to be decontaminated from the pepper spray. (Complaint, ECF No. 1, at 10.) Plaintiff has not provided the Court with any evidence that Defendants Garcia and/or Neighbors knew that the pepper spray in Plaintiff's cell had not dissipated by the time that Plaintiff was returned to his cell. Indeed, Plaintiff has not provided any evidence that either Garcia or Neighbors escorted him back to his cell, as opposed to other officers, after going to the program office. Plaintiff has also not presented any evidence that Defendants Garcia and/or Neighbors knew that, after Plaintiff had wiped down his cell with his state-issued towels, Plaintiff was unable to remove the towels from his cell. Finally, Plaintiff has not offered any evidence that Defendants Garcia and/or Neighbors knew that Plaintiff was having difficulty breathing and seeing and was experiencing a burning sensation throughout his head and body because the ventilation system in the building blew hot air into Plaintiff's cell, which made the vapors of the pepper spray residue in the cell very strong. Therefore, Plaintiff's evidence is insufficient to raise a material fact that Defendants Garcia and/or Neighbors knew about and disregarded a substantial risk of serious harm to Plaintiff from the failure to decontaminate Plaintiff's cell.

Based on the foregoing, having carefully reviewed the evidence and after resolving all factual disputes in favor of the plaintiff, the Court concludes that no reasonable trier of fact could find in Plaintiff's favor with respect to Plaintiff's claim that Defendants Garcia and Neighbors violated his Eighth Amendment protection against inhumane conditions of confinement by failing to decontaminate Plaintiff's cell. See Matsushita, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). Accordingly, the Court will recommend granting Defendants Garcia's and Neighbors' summary judgment motion on Plaintiff's conditions of confinement claim and denying Plaintiff's summary judgment motion.

    4.    Qualified Immunity

Defendant Garcia contends that the Court should grant him summary judgment on Plaintiff's conditions of confinement claim pursuant to the qualified immunity doctrine. However, since the Court has found that the undisputed facts establish that Defendant Garcia did not violate Plaintiff's Eighth Amendment protection against inhumane conditions of confinement, the Court finds that there is no need to decide the issue of whether Defendant Garcia is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

## IV.

## RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment, (ECF No. 64), be DENIED;
2. Defendants Garcia's and Neighbors' cross-motion for summary judgment on Plaintiff's failure to intervene/protect claims and on qualified immunity, (ECF No. 69), be DENIED;
3. Defendants Garcia's and Neighbors' cross-motion for summary judgment on Plaintiff's conditions of confinement claim, (ECF No. 69), be GRANTED; and
4. This matter proceed only on Plaintiff's complaint against Defendant Garcia for excessive force in violation of the Eighth Amendment, and against Defendant Neighbors for failure to intervene/protect in violation of the Eighth Amendment.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to

///

///

///

///

16

Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 27, 2019**     /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE